Case number 15-2130, Energy Conversion Devices, et al. v. Trina Solar Limited, et al. Oral argument not to exceed 15 minutes per side. W. Gordon Dobey for the appellant. You may proceed. Good morning, Your Honors. Good morning. May it please the Court, Gordon Dobey from Winston Strong on behalf of Energy Conversion Devices.  I think it actually comes down to one fairly complicated question for the Court. And the issue is this. Do the antitrust laws provide standing to a competitor who is challenging a horizontal price-fixing case below cost and to dump product in the United States with the intent of destroying competition if it yields low prices to competitors? That's the issue. If what? If it yields lower prices to consumers. And the reason I'm focusing on this issue of below cost is because I think it synthesizes all the cases and is actually very, very helpful. So it's a horizontal conspiracy to sell below cost. And the District Court of... Just to make sure we're all on the same page. Yes, Your Honor. Would you agree that recoupment's a requirement of a claim under Section 2? So recoupment is a claim under Section 2 if it's a predatory pricing claim. A predatory pricing claim under Section 2 requires recoupment, right? For monopolization, yes. So how strange that you wouldn't require for Section 1. I mean, you just end-run the whole limit that they're placing on Section 2 claims for lots of good economic reasons and so forth. Here's the reason. And actually, I think your case, Justice Sutton, even your case, Nick Sand, Judge Rogers' case. It's a court's case and I'm not a justice, so keep going. Judge Sutton and Judge Rogers, your case in Counts, Inc. Jet, those cases all synthesize on this issue of below cost. Let me explain. The district court here found that there was an adequate... My point is isn't everyone going to bring every predatory pricing claim under Section 1? No. We have some good reasons for requiring that from the U.S. Supreme Court on Section 2. So most predatory pricing claims involve unilateral conduct. They involve somebody who is trying to become a monopolist. Where's that? It's both. You have some unilateral and that's allowed under Section 2, I get it. Right. Under Section 1, you have to have group, but you can also have group claims under Section 2. If it's a monopoly claim. Yeah. So in order to have a monopoly claim, right, so in monopoly you've got to be able to control price or control output, right? So in a monopolization case, in those situations where somebody is becoming a monopolist and we're trying to figure out whether or not they're going to be a monopolist, you look to the issue of can they control price. And that's really what recoupment is. And so the case is, if we have a recoupment requirement in a setting where one person can do it and it's a lot easier to control one person than it is to control a group, so the greater risks are in the Section 1 setting, we're going to get rid of the recoupment requirement. If you have a, if you, you don't get rid of it. There isn't one case that has applied recoupment to a Section 1 horizontal conspiracy where it's sale below cost. Not one. Okay? Well, we have our case in Superior Production Partnership. Judge Gibbons says it applies to both Section 1 and Section 2. Superior Production is a case that involves a conspiracy to monopolize. And again, if you're looking at monopoly and you're looking at whether somebody is going to monopolize a market, in that case it involved truck hoods, truck replacement hoods. And the allegation was there was a Section 2 case of monopolization and there's a Section 1 count of conspiracy to monopolize. If you're trying to figure out monopoly, you have to look at either output or you have to look at ability to control price. That's what a monopolist can do. They can put it whatever price they want. So, in Superior Production, the decision states that Matsushita clearly considered both below cost pricing and the likelihood of recoupment to impact if not fully determined the plausibility of the predatory pricing conspiracy. It's the same point made by the U.S. Supreme Court in Matsushita. Okay? In Matsushita, the Supreme Court- I was just making the point that in the Sixth Circuit decision from a year ago, they said the same analytics apply to Section 1 and Section 2. That's all I'm saying. Right. But it's not a predatory pricing case, Your Honor. Predatory pricing cases are per se unlawful. No questions asked. And that's the difference, whether it's a low price or a high price. The U.S. Supreme Court said in Maricopa, okay, low price conspiracies are per se unlawful. No questions asked. I thought the U.S. Supreme Court was highly skeptical of low price predatory pricing schemes. So the difference is, and if you look at Mr. Layton's letter that he wrote the court last week- I'm just referring to the Supreme Court cases. There's a lot of them that are very skeptical of low price schemes because low prices help consumers. And what I'm drawing a distinction, okay, and this is what I'm trying to get at, and there's case after case, you're exactly right, Judge Sutton, involving low prices. You can't be just bringing an antitrust case because Walmart has lower prices than some other store. And that's the part of pick Supreme Court cases. Cargill, right? Cargill is a case that involves two meatpackers, all right, and they object to this merger that's taking place. And they go in and they have standing to object in the first instance of the merger. But at the end of the day, the Supreme Court says, what you're complaining about is low prices, but they're not below cost prices, okay? And there's no standing to bring a claim. You don't have antitrust injury if the prices are above cost. And that's the same- If we define the term predatory pricing as pricing below cost in order to drive out competitors, is this a predatory pricing case? We don't plead this. So typically you have a predatory- Is it a yes or no question? It's a horizontal price fixing case. It's not a predatory pricing case under section 2. Why not? I mean, in Nixan, the people in your position lost because they declined to plead a predatory pricing case, and the dissent said, well, in effect they did, but they disclaimed it. What's going on here? Why are you reluctant to say that it's a predatory pricing case? All you have to do is say, yes, this is a predatory pricing case, and Nixan is distinguishable instantly. So Nixan- You're reluctant to do that. I don't understand why. Okay. So Nixan was a case that was under section 2. And so for what it's worth, I think you agree with Judge Rogers. Judge Rogers is saying as long as you allege below price- Below cost. Price fixing, you have a predatory pricing scheme. You don't need the additional allegation of recoupment. I think you agree with that. In order to characterize it as a predatory- I do agree. I do. I 100% agree with it. It turns out- So it's a predatory- So I want to get it straight here so we don't have the problem that we had in Nixan where we didn't know whether they were- Well, we knew, but there was a question in the dissent as to whether the parties were claiming predatory pricing. I'm not talking about a monopolization claim. I'm talking about a predatory pricing claim. You can, under my understanding, but it's a newly formed and not fully educated understanding, but my basic simple understanding is that predatory pricing means you price below cost to drive someone out of business, which you could do in order to monopolize later, but you could also do because you hate the guts of these competitors. Somebody stole your wife, and so you're going to run them out of business. That would be predatory pricing or not? Judge Rogers, that would be predatory pricing. It's often stated- Does it by itself suffice? But first I want to get the characterization. Absolutely, yes. If it's a horizontal price- Do you agree with predatory pricing as the right label? I would label it as a horizontal price fixing below cost. I know, but I'm trying to get at these cases that seem to go against you, but they say, but this is not a predatory pricing case. You would distinguish most of those cases, I would think, on the grounds that this is a predatory pricing case, but when I ask you, you say, oh, no, it's not a predatory pricing case, then I'm like- Judge Rogers, let me say this. No. I actually think- Toss that life raft away. Forget about it. I don't want that lifesaver. I want another one. I think Nick Sand is the way that the difference between Chief Judge Cole and the dissent and Justice Sutton was it turned on whether- Judge Sutton, whether it turned is below cost, right? So there was an admission in Nick Sand that Your Honor relied upon, that they were not claiming below cost sales, and Chief Judge Cole said there's evidence in the record that perhaps they could plead below cost sales. That's Judge Martin, but I'm not sure. Okay. Here we have a finding by the district court judge in his October 31, 2014, decision that we had adequately alleged below cost pricing. He starts that, and so we have that. So we have a horizontal price fixing conspiracy. We have below cost- Below cost in order to drive out competition, though, right? You don't want to allege that it was intended to drive out competition. We do allege, and we will prove that it was intended to drive out competition. Why isn't that if I define a predatory pricing scheme as one that sells below cost in order to drive out competitors, and you say this is a scheme that we're claiming that this is a below cost scheme to drive out competitors, why are you semantically resisting calling that a predatory pricing scheme? I just don't get it. Is there some sort of jargon that antitrust lawyers use that I'm required to use? Your Honor, it's just that typically if you were going to do a full predatory pricing scheme, we would have a whole analysis under Section 2 and a monopolization piece that would go with it. So most predatory pricing schemes are monopolization schemes. Yes, Your Honor. But it's not predatory pricing if you drive out competitors just because you don't like them. You just don't like that kind of- Maybe it's religiously based. You know, there's all these people of a different religion that are in, and we're going to drive them out. Would that be a violation of the antitrust laws? Absolutely, Your Honor. But we just shouldn't call that a predatory pricing scheme. I think it would more typically- Predatory is like a bird eating something. Right. So we think that the conduct is predatory. We think that the evidence is predatory. We put some of that in- You would agree that if you define predatory that way, this is a predatory- I would agree if you define it that way, Your Honor. Absolutely. You admit that you haven't pleaded recoupment, and you admit that you can't prove recoupment. No, we don't admit that. In our initial complaint, we don't plead recoupment because no other court before, and, in fact, the Supreme Court of Matsushita said recoupment goes to the plausibility of the conspiracy, not an element of the violation. It doesn't say that last part. It mentions plausibility. It doesn't say not an element. It remands the case. So it says you can't establish recoupment, but Matsushita is remanded specifically- For more evidence of competence. For more evidence of the plausibility of the conspiracy. So it says, on remand, the Court of Appeals is free to consider whether there's other evidence that is sufficiently unambiguous to permit a trier effect to find that the petitioners conspired to price predatorily for two decades despite the absence of any apparent motive to do so. But why didn't you bring a Section 2 claim? If your answer to Judge Seiler is you can prove recoupment, your answer to Judge Seiler's recoupment is not even an element of the claim, I don't understand why you wouldn't do what most people do, which is bring Section 2 and Section 1. What's the downside? Why didn't you bring a Section 2 claim? Typically what you would do if you're going to have a monopolization claim is you could have market shares high enough, 50%, 60%. And the question is can you hear, in the rooftop market, they collectively had, in three years, they went from a 0% market share to 80%. But it's combined. And so rather than litigating whether you can have a combined monopoly, which is an open issue. There's U.S. Supreme Court cases that have allowed it. 80% is not enough? But it's the three combined. So typically you'd say a monopolist is one. And so the question is can you put three together? If we had a Section 2 case, my friend Mr. Layton would be arguing you can't have a combined monopoly, and there's cases on that as well. So what we have is a Section 1 case, which is all we're alleging is that the horizontal price fixing, we've been through discovery in connection with a related case where we had an agreement. We can prove an absolute conspiracy between the defendants here. We can prove, and the judge found, that it's below cost. We, in fact, move for summary judgment. Is that enough to find that you're trying to drive them out of business, which is not the same as recoupment? We can prove that they were trying to drive them out of business as well. We can absolutely prove all of those elements. But you don't want to have to prove recoupment. We don't think it's an element, but if you were to make it an element. What about the history that's outlined in your opponent's brief with this Solyndra case and so forth? I thought, frankly, it is half the story. Well, I don't want the whole story. You're on the red light. Can you say which part is most pointedly inaccurate? We filed the complaint. We looked at the evidence. We looked at the documents. We decided not to go with the Section 2 case in Solyndra and to only go with Section 1. But you could have alleged it even so. We could have done the group monopoly. We would have been litigating over it. You could have done it in your Section 1. You could have added, and they planned to, and we, whatever it was that was taken out of the Solyndra complaint. We never had recoupment in the Solyndra complaint. The judge said we don't need recoupment and ruled. Was that case on appeal? It was settled, and they paid $56 million in connection with that. I don't want to know about the settlement. So the final judgment in the Ninth Circuit is that the district court is in your favor on this issue? That case was the Frick Press case. We cited Matsushita. We cited the Cargill. I'm asking you what you cited. I'm saying did you win on the issue that's before us today? Yes, we absolutely won, and that's the record. So just a couple more questions. So do you have a Section 1 case that says what you want, which is recoupment is not an element? So, I mean, because I've got this Easterbrook opinion, Wallace, which makes it clear. I mean, Frank Easterbrook is pretty clear on this. Whether it's Section 1 or Section 2, you need recoupment in a predatory pricing setting. So we have a case, and I really want you to give me something that when I read it, I'll say, yes, he's right. Because if you tell me something where I'm not going to say that, I'm not going to be happy. So I want one where I read it, and it's dealing exactly with Section 1, and they say, no, you don't need recoupment. What is that case? So Matsushita. Okay. Unhappy. I've read it. Even more unhappy. There's so little analysis in there. I don't even think he came to grips with what the issue is. What's the second one? Palindra. We have a district court case that doesn't even analyze it. We have the Frick Press case. What's that? What circuit? That's also a district court decision out of the Ninth. We have the decision of Cowan's Inkjet from Judge Rogers, which is a decision that states specifically. Our Judge Rogers? Yes. Okay. Six circuits. Six circuits. We already have a six-circuit authority that says Section 1 claims predatory pricing. Yes, it's a Section 1 claim. Predatory pricing. It's a, what it is is a tying case. What? It's a tying case. I was asking about predatory pricing cases out of Section 1. So the only predatory pricing cases that have been. Is that the milk case? I was on that case. That's not really a predatory pricing case. The only cases that have been cited by either side that deal with the horizontal price-fixing conspiracy are the Solyndra case, Matsushita, Frick, and. I have one other question. Yes. In trying to, and this is really for both of you, in thinking about the concept of antitrust injury and recoupment, would you really say it's really the same thing? In other words, you know, do they really come to the same point, I guess is my issue or question for you? Because you could say they do and say, well, you don't have to worry about it, though, in this kind of scheme. I mean, that's how you could do it. Or you could answer by saying, no, they're analytically different and you should never think of them as the same concept in this kind of Section 1 price, predatory pricing scheme. So I think they are analytically different. I think it goes to, if it's a, if it's a, what Matsushita says is that if it's a Section 1 case, you might look at recoupment because it goes to the plausibility of the conspiracy. We think we can get there and show that this conspiracy is very, very plausible based on the evidence and the discovery that we've already taken. But the key factor for any Section 1 horizontal case and generally is just are the defendants selling below cost? Because what we're trying to do in America is decide what's fair competition. And if the defendants here are selling below cost. We have anti-dumping international agreements. I mean, that's the way, that's not the antitrust laws. We have agreements and that's not. So in this instance, you've got a dozen companies that are out of business. There's no private right of action for dumping or anything like that. So the question is. Change the laws. Right. It's an 1890 law. Right. And since the 1890s, it's not the Consumer Protection Act of 1890. Right. It has to do with competition. And the law protects competitors and allows competitors to absolutely bring claims if they face below cost sales. I thought the antitrust laws protect competition, not competitors. Competition includes competitors. I can't come in here, Judge Sutton, and say, look, they're fixing prices and they're low prices. Which is what my adversary says. And I'm very unhappy with low prices and I've got a price fixing case. Okay. You might pour me out on that. All right. So let me be very clear on it. The Justice Department can bring that case. In fact, it's criminal. All right. So to fix prices, even low prices, they can go to jail. That's a criminal claim. But for me, as a competitor, what I have to do is say it's a price fixing scheme, but it's below cost. If it's below cost. You intended to drive out competitors. In this case, we'd absolutely plead that, Judge Rogers. Okay. If it's below cost, I don't have to do anything else for standing beyond that. But you would think that if that was the case, there would be some cases where that was going on. We would see that that was the nature of the claim and that somebody recovered on it when that happened. Are you just saying it's just kind of unusual for that to happen because of what goes on in China and that's what they're doing? I mean, we do think the existence of the non-market economy is a huge factor. Well, it's not so non-market anymore. They may get some heavy subsidies from the government. I guess that's what you're saying. Well, it's, I mean, we have a How will you claim that they're paying for all of this? It's one of the reasons it goes to the plausibility of the conspiracy. Right? That it's socialist? No, but the government is just The plausibility of the conspiracy is driven in part by the non-market economy factors. And we have an expert on this. We have the government's former chief economist who wrote a report on this. Are you the one who said that Japan was not a market economy? There was one of the briefs that said Japan was not a market economy. Was that you? No. But these are listed on the stock exchange. Right. Is that a non-market economy, the New York Stock Exchange? So part of their, so what they say in their own This is going to go down very quickly if you say yes. So part of their stock is traded on the New York Stock Exchange, some of these companies. Profit is a part of what their analysis is. But it's not the entire part. The biggest driver for them, their executives' compensation, everything is revenue, revenue, revenue. It has nothing to do with profitability. So the fiction of that this is all about profit is not the case. We plead that they are the alter ego of the Chinese. So the antitrust laws prohibit a kind soul from pricing below cost and using all of their money just to give out products to American citizens. And they never plan to recoup. They're going to keep doing this until the billion dollars is gone. Why? They love their citizenry. I don't think the antitrust laws do anything about that individual until that individual starts to hurt consumers by charging monopoly prices. It's not an individual. It's a conspiracy. Okay, three brothers that love America have a billion dollars. And they want to sell everything below cost until the money runs out. They can do that in this country. It's a free country. They're hurting no one except the competitors. That's unfortunate. But they're helping consumers. That's the key goal. If three companies, if GM, Ford, and whoever all got together and said we're all going to fix prices on a product. My example was three brothers. We'll call them priests to make it easier to get the point I'm making. You can do this for good reasons. I'm not saying that was happening here. But the key point is we try to avoid the intent analysis. We try to wait until they do something that's super competitive monopoly prices. Maricopa County is a U.S. Supreme Court case that involves low prices. It's a low fixed price conspiracy, okay, per se unlawful under the antitrust laws. U.S. Supreme Court. Okay, so the notion that just because it's low prices it's lawful is not the law. Low price conspiracies are absolutely against the law. Well, we'll keep looking for your case. We'll look at your cases and see where they say recruitment's not relevant. But I haven't seen it yet. I find below cost, Your Honor. That's the issue. If it's below cost, even if it's low price, and it's a horizontal conspiracy, all of the cases synthesize. Atlantic Richfield, Nick Sand, Cowan Zinkjad, Matsushita. Matsushita says very specifically. We understand that. Okay. Thank you. May it please the Court. Dan Layton, Kirkland, Fortrina, on behalf of all the appellees. I start, Your Honor, by starting with one of your questions, Judge Rogers, on what the definition of predatory pricing is. You did address this question. The panel did address this question in the Cowan Zinkjad case, which was the case about the aftermarket printhead cartridges where Kodak had a 100% market share in printheads, and the issue was the alleged tying between the printheads and the ink. And under those circumstances, where there's a 100% market share in the aftermarket with high switching costs that are demonstrated, their recoupment is shown. So it's not controversial for that perspective. But in that opinion, it says that Nick Sand implicitly defined predatory pricing as, quote, pricing below cost with the goal of recouping the defendant's losses by charging monopolistic prices later. That is completely consistent with Matsushita, with Superior Production. The notion is that it is only an antitrust violation under Section 1 if it is married with recoupment, and for both the plausibility and the antitrust injury reasons. Was that a Section 1 and 2 both in that Nick Sand? It's a tying claim, so it's Section 2. Okay. So it's not a Section 1. What's your best case showing under Section 1 that you have to have recoupment in the claim? This Court's decision in Superior Production would be my best case. In that case, the Court did decide that the elements, and the word is used specifically, the elements of a Section 1 claim include recoupment. And the panel says that the Court says the plaintiff must grapple with recoupment in order to prove its Section 1 case. It cites both rationality or injury issues. It says it need not decide between them. Now, we're not wrestlers. We are litigants. And the way we litigants grapple with elements is to allege them. And as you heard and has been repeated several times, ECD, the appellant, chose not to allege it. Now, Your Honor, I believe it follows directly from Matsushita. Matsushita says directly— Could I ask about that case that you just cited because you did cite it? But if you actually read it, and I'm reading a quote from it, it says, whether predation and recoupment are merely considerations that inform the plausibility of inferring an agreement or are formally independent requirements beyond a Section 1 agreement and antitrust injury is a technicality we need not address here. Either way, a plaintiff must grapple with these in order to win on a summary judgment motion. I put those last words in myself. I don't see how you can say that's a holding, that it's a formal requirement. It's an explicit denial that this is a pleading requirement. It just says it isn't, basically. It says it's not going to decide it. Well, all right. There's two separate issues, Your Honor. It says we're not going to decide whether it is or it isn't, right? You're right. So I understand the question, and the answer is this, and it was actually very clear during the appellant's argument. ECD does not deny that it must allege below-cost pricing in its Section 1 claim. If you look at all three of its complaints, I believe, but certainly its last one, it alleges below-cost pricing. It could have taken the position that neither of Matsushita's allegedly Section 2 elements were imputed, brought into Section 1 under Superior Production. It doesn't do that. The Superior Production Court was required to decide whether these allegedly Section 2 elements, one, below-cost pricing, two, recruitment, were brought into or incorporated into Section 1. It had to decide that because it had to decide whether the plaintiff had adduced sufficient evidence of below-cost pricing. It had to bring both those elements in. There's no reason to distinguish between the two. I don't understand how you can say that's a holding in light of what I just read. I think it's necessary to . . . It's about its holding nature. Oh. Well, on that point, I think that Judge Sutton's comment is right, which is that what I understand the court to have decided not to decide is whether it is required for purposes of demonstrating the plausibility of an agreement or whether it is required for purposes of establishing antitrust injury of a competitor. But if it's the former, let's assume, because this opinion assumes that one or the other is the case but doesn't say which one. It does do that, right? So let's assume that it's the one that's not in your favor and that these are considerations that inform the plausibility of inferring an agreement. So these are things that might, if you showed them, make an agreement plausible for purposes of summary judgment, because it's a summary judgment case. And the answer that's given by your opponents is, we don't need to infer an agreement. We're alleging facts of agreement. So we don't need these two things to infer an agreement because we're alleging an agreement. And so, therefore, this case doesn't get you anywhere. It's nice. I mean, it doesn't go against you, but it doesn't demonstrate it. I'm hoping I'm going to advance the conversation a little. I think the answer to that is not the Sixth Circuit decision. It's Matsushita identifies these two additional elements of a Section 2 claim, below-cost pricing and recoupment. And plaintiffs here have agreed below-cost pricing is a proper element, just not recoupment. So they're saying in for one, in for both. But I think that requires response to what I think is Judge Rogers' lingering concern. Why wouldn't you say below-cost pricing with the aim of driving out competitors is enough? I think that's the key point. Why wouldn't you say a price-fixing conspiracy with below-cost pricing, whose design is to drive out the competition, suffices? In other words, you know, it's true, recoupment still lingers as a Section 2 requirement, but why not just say for Section 1 it's enough to have below-cost pricing plus the goal of driving out the competition, which plaintiffs think, I know, incorporates part of Matsushita, not all of it. But Judge Rogers' point would be, why isn't that enough? Why hasn't that advanced the goals of Section 1? Here's why. Because, as Matsushita and Brook Group make clear, low-cost conspiracies are, number one, implausible, and number two, as Your Honor mentioned, even more implausible in a group setting. And three, low prices are pro-competitive. Therefore, the Supreme Court counsels in Matsushita and Brook Group, we have to be really, really careful. It may counsel that we have to be careful. What I want to know is the strongest case that holds. It's the flip side of Judge Sutton's question. What case supports you? I must say I was a little put off when you said that in your brief that Matsushita just compelled the conclusion in this case that recoupment was required. And when I read, I just said, well, that's great. Now I don't have to think about this anymore. We've got a Supreme Court case on point. My counsel has told me that, and I looked it up. And when I got to the end, I thought, wow, this supports the other side. I mean, I really did. It seems to support them. It doesn't seem to support you. But you say, well, but it's been interpreted to support you in the Sixth Circuit case. And you open that book. You know, we still have these hardbound books in our library sometimes. I open that book. It also doesn't seem to support you. It seems to preserve it. So I'm wondering what case am I going to read, just like Judge Sutton's looking for a case, what case am I going to read that says recoupment is required in a Section 1 case where the allegation is below cost pricing intended to drive out competition? And where is the case that says you have to have recoupment in order to do that rather than some other mean or nice reason for driving out competition? I don't know of too many nice business people. But there are some that are really mean-spirited, and they want to go out and destroy people that they've been competing with or that they'd like to get rid of or get out of the way for this reason or that. It happens, doesn't it, that people don't like other people and do mean things to them? It doesn't mean it's actionable under the antitrust laws. It doesn't mean it's actionable under the antitrust laws. No, but if it's combining to undermine competition by driving out competition. So here's my answer. What's the case? With respect to rationality and going to rationality, the multi-state legal studies case on the Tenth Circuit. What do you mean going to rationality? Multi-legal defense services? The Tenth Circuit case where the court says it is only rational if the defendants can recover their earlier losses. But saying it's only rational doesn't mean that you never had a lot of crimes. They're not rational, right? Is that all it says? Trombley teaches that a Section 1 case must be plausible in order to advance. It must be rational in order to advance past the playing stage. It has to be plausible that that's what happened if you allege certain facts, but they've alleged facts involving combination. You can say, well, it's not rational, and therefore just the fact that prices are low and business went out doesn't mean that there was a combination. But if you allege that Joe called up Jim on a certain day and said let's drive out of Jack's Motors, let's just price the heck out of him, underprice the heck out of him, and he'll go away and we won't have to worry about Jack anymore. That's not rational, you would say. But if you allege that you have facts which show that, it doesn't have to be rational anymore, does it? I respectfully disagree. What case is in contrary to that? I believe that Twombly, which imposes a plausibility standard on antitrust complaints and goes directly to that. There's a separate element, as Judge Sutton recognized, which is antitrust injury, and there I would point to the Wallace case, Judge Easterbrook's case. Has any other circuit ruled directly on this issue besides district courts or any court of appeals? The two courts I just mentioned, multistate legal studies, where it did find that it was rational because recoupment was possible. And it was a Section 1 case? Yes. And it was a predatory pricing case? It was actually a zero-cost pricing case in Wallace. And it was below-cost pricing in multistate legal studies, too. In Wallace's which case? Judge Easterbrook's opinion in the Seventh Circuit. So another way of getting at this, you know, I asked your friend on the other side, as an antitrust lawyer, do you think of recoupment and antitrust injury as a null set or do you think of them as different things? Because I think our cases, including superior production, all say whether Section 1 or Section 2, you have to show antitrust injury. Yes. So that makes that question relevant, but I'm not sure they are the same. So I think I understand the question. I think they're very distinct. Okay. First of all, I think superior production actually does this. With footnote 5 in its discussion of inept predation, the concept of inept predation has come up, I think, in theme throughout much of the argument. And what is the – Our argument? Yes, in terms of the brothers. It's not my concern at all. No, that was my example of the kind-hearted predation. Yeah. And what footnote 5 of superior production says is the antitrust law should not post an obstacle, pose an obstacle, quote, to inept predation. And that's because of the independent antitrust injury issue. And I think that this – So you would call antitrust injuries getting at that? Yes. And I think that the opinion that best illustrates this is the one that just came out of the Second Circuit, is the Goldblum case. Because there, it's a low-price conspiracy. Its banks are both buyers and sellers. So they're buying – I'm sorry to cut you off, but I'm just trying to advance things. So that makes some sense to me that they are distinct. And it's admirable as an argument because I think it kind of hurts you, right? Because here you wouldn't call this an inept predation case. You would say – I mean, it seems to me to prove that recoupment is really a key issue. So let me – can I address that? Okay. Well, I mean, I was admiring that you were telling me it's great. I appreciate that. I appreciate it. I'm not hurting you, but you're looking at me like I'm misunderstanding what you're saying. If there are more inept predators than this, with all due respect to my clients, we have one that's in bankruptcy, one that has a going concern note from its auditor. It is uncontested on facts that are judicially noticeable by this court that this – I see, I see. And so you look at Matsushita. Now, an appellant's going to come up and say, you can't – you have to think about this at the time of predation, and they're going to cite out-of-circuit pre-Matsushita cases. Matsushita itself looks at – Yeah, but it's a summary judgment case, right? If it's an element – if it's an element – so I've never understood this argument. If it is an element of a claim, then you must allege it. You know, it talks – if it is an element of a claim, then it must be alleged to withstand 12B-6, and there must be a fact in order to withstand Rule 56, and there must be a preponderance of the evidence as decided by the jury at trial. And other than the standard of – Is this Matsushita you're talking about? Yes, Matsushita – Well, this is the language I'm looking at, Matsushita, that just seemed to go for the other side. It says, on remand, the Court of Appeals is free to consider whether there is other evidence that is sufficiently unambiguous to permit a trier of fact to find that petitioners conspired to price predatorily – it doesn't say and recoup – for two decades, despite the absence of any apparent motive to do so. So you can go back and find evidence with no motive to recoup, just a motive to price predatorily for two decades. We don't think you're going to find it is what's implicit there, but if it's there, then we're not saying you can't do it. Am I reading that wrong? I believe that under Twombly it has to be plausible, there has to be – But you were talking about Matsushita when you were talking to Jeff – But beyond that, if it is only one element, then I say let's look at the amended complaint as a whole. They also allege loss of consumer choice and lower costs. You would agree that Matsushita at least contemplates that facts could be shown which would get past summary judgment, that there was a conspiracy to price predatorily for two decades despite the absence of any apparent motive? No. That's what it says. I don't agree with – I believe that on – An overrule? No, I believe that on remand they could show that there were other facts that demonstrated that recoupment actually was plausible, that there were other facts that went to recoupment that therefore went to the plausibility of the conspiracy.  It doesn't believe they're going to do. But even if you go beyond and you say we're in a multi-factor analysis, which I respectfully disagree with, even if you're there, you look at their amended complaint or their complaint as a whole. They allege that we were – that the defendants were trying to maximize employment. That is never going to implicate antitrust injury. It's never going to hurt consumers. They allege lack of product innovation and lower cost product under the en banc opinion of Nixand. That is necessary but insufficient. They allege that they are Chinese companies. As Judge Sutton pointed out, they are listed on – or they were listed on the New York Stock Exchange. So what else is there? The allegation that competitors agreed to price low as opposed to price high. When you're in a high-price conspiracy case, you say, yeah, the motive is obvious. It is plausible that folks would get together in a smoky room and charge consumers high prices. It is not obvious that consumers would – that defendants, competitors would do that in a low-price conspiracy, and that is why more is required. What do you think is the easier path to affirmance from your perspective, recoupment as an element or lack of antitrust injury? I honestly don't believe the panel needs to decide that. I don't think – I think that it can take the same – I'm not – I'm asking you – you come here trying to get an affirmance. Yes. What's the easier path from your perspective? That is – Your perspective. My perspective, the least – the straightest line, I think, is the panel saying we said in Superior Production that it is an element of the claim. It is an element of the claim. I think that there is – there are a lot of authorities, including the Second Circuit statement just last week, that competitors in a low-price price-fixing conspiracy don't have antitrust standing without – so I think that is the easiest – I think that is a very easy way to go. But the Second Circuit case is an antitrust injury case. Yes, that's right. I'm sorry. Okay, so – okay. So implicitly, I'm saying the easiest line, the straightest line – Either one. – is you don't need to decide. The very straight line is an antitrust injury, and following the multi-state legal studies case out of the Tenth Circuit, I think entwombly, I think rationality and plausibility in a low-price conspiracy case is an awfully straight line as well, Your Honor. Thank you. Thank you. Thank you. Your Honors, if I could just respond to some of those points. So first, let me start where he ended. The case from the Second Circuit last week, the Gelboin decision, that actually reversed a decision dismissing a complaint on antitrust injury and actually ruled in favor of the plaintiff. And the language of Mr. – Which case are you talking about again? This is that Second Circuit supplemental authority that we sent around. So it actually reversed on antitrust injury and sent the case back down for further proceedings. And the language that Mr. Lane keeps referring to, it's talking about a low-price conspiracy. And he keeps saying low-price conspiracies, you can't bring a – there's no antitrust injury. We're talking about a below-cost price-fixing conspiracy, and that's all the difference in the world. The Matsushita decision – What do you do with this idea that some people have good reasons to give stuff away? They don't care if other companies go out of business. They just want to give it away. So that's the Wallace decision that I think that, Judge Sutton, you were referring to by Judge Easterbrook. That's a pro se complaint. I looked at it. It's two pages long. There's more words in two paragraphs of Easterbrook's opinion than in the entire thing. It's a plaintiff that had never written a line of code who wanted to compete against Linux, which is a system where everybody agrees they're not going to enforce their copyrights. We can all agree people can give away books. We can agree – authors can agree not to enforce their copyrights. That's what he finds. And, in fact, Judge Easterbrook states specifically that – It's back to inept predation, right? Or kind predation, whatever we're going to call it. What he says is it's unilateral conduct. The court found that new works that were created under Linux was unilateral conduct. So it's not a price-fixing case between competitors. It's a guy who never even wrote a line of code who says, I want to compete with Linux. I'm going to file a pro se complaint. What's so funny to me about your theory is you think it helps you that this is a group. And, to me, it hurts you. In a predatory pricing scheme, it hurts that it's a group because it's so hard to get the group to agree once they've driven everybody out what the pricing is going to be at that point. That's a serious impediment. What the jury is supposed to look at, right, and what the factual issue is – and this case went out on a motion to dismiss, and we actually have more evidence, a lot of it under seal, and I'm not going to talk about it in open court, but we've cited some of it in the amended complaint that you have. We have a redacted version. You look at what was happening back at the time that the parties entered into the conspiracy. That's the issue. The question if you've got a conspiracy to rob a bank and two guys get shot as they're driving away, it doesn't mean that they didn't have a conspiracy. That's what happened here. We have hard evidence of a conspiracy between the defendants to fix prices with a goal of destroying American competition. We can prove that, all right? And all we're asking, I mean, we're talking about a court that we never saw. So when the case goes to the jury, you know, it gets through summary judgment, the case goes to a jury, the jury instructions say nothing about the likelihood of recouping their investment, the investment being the losses by below-cost pricing with interest and then charging monopoly prices later. That possibility or likelihood is just not for the jury to consider. Am I right? In cases where courts have done recoupment, what they do is they look at was it likely that the parties would recoup at the time that they entered into the conspiracy. Okay, so that would be part of the jury instruction. In a case that required recoupment. Our case doesn't require recoupment. Well, please answer the question I'm asking about this case. In this case? In this case, what is the answer to the question, what does the jury instruction look like as to the likelihood with this below-cost pricing that these defendants are going to recoup their loss, the investment? Is that part of the jury's inquiry or not? It's not part of the jury instruction in our view. Wow, that's unbelievable. Well, there's not a case. They have to intend to destroy competition. They have to intend to destroy competition and it's got to be below cost. Right? So you would be able to take to a jury a case where there's zero market barriers. I mean, the three of us could start a company tomorrow with $10 and enter that. You would still say that goes to the jury as long as they charge below cost pricing and they intended to eliminate the competition. Even though there's zero market barriers, even the three of us could enter with $10. You would say you could still win. I don't know what would happen in a case where everyone enters in with $10. This is an industry where people need billions of dollars to enter. I don't understand. It's hypothetical, so you have to answer the hypothetical. But I don't understand why recoupment. The Justice Department could criminally indict three people. My example, no issue of recoupment, no issue of recoupment. And it's below cost and they have 80 percent of the market like this? Yes, there's no recoupment required. It doesn't matter whether there are just zero market entry barriers. Market entry barriers are not part of a Section 1 case. Okay, right. The only weakness of Judge Sutton's example is that $30 could provide enough to drive everybody out of business. But if everybody gave in $30 billion, you could wipe out business. It goes to plausibility. I think that market. So something could be implausible because there's no chance in this particular market, not yours, in this particular market that you could recoup the losses. No, because there's no chance that you could. I'm sorry. I'm not sure I understand the hypothetical. You said it goes to plausibility. You said my hypothetical goes to plausibility suggesting my hypo was implausible. That's what I took you to be saying. Matsushita says that the question of recoupment in a Section 1 case goes to plausibility. So I'm agreeing with Matsushita. I think that's what the current statement was. Okay, great. So one inquiry in a Section 1 predatory pricing case is whether it's plausible to recoup your gains. In other words, plausible to profit. Plausibility. So if I wanted to prove that the conspiracy was plausible, I could do it with direct evidence of price fixing, which I have. You have to have plausibility of recouping the investment. That's all I'm asking. None.  No matter the circumstances. No. It goes to the plausibility of the conspiracy. That's what the issue is. That's the difference between you two. Yes. It goes to the plausibility of the conspiracy. There's all sorts of... Recoupment goes to plausibility. No. No. Recoupment goes to the plausibility of the conspiracy. So recoupment is relevant, but it goes to plausibility of the conspiracy. Yes. That's exactly what Matsushita says. That's what I think Superior Production says. I think I got it. Okay. Thank you. Well, I think this is a head-scratcher, but I think we've heard about all we can hear today, and I appreciate the advocacy. It was an interesting argument. I don't think we have any additional cases, so you can go ahead and adjourn the court.